OPINION
Plaintiff-appellant, Michael Marley, appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, which overruled a magistrate's decision granting his motion to sell marital real estate.
Appellant and defendant-appellee, Cheryl Marley, were divorced pursuant to a decree of dissolution filed on June 29, 1994. The parties had previously executed a separation agreement which was approved by the trial court and incorporated into the decree of dissolution. According to the terms of the separation agreement, appellee was permitted to reside in the marital real estate until her remarriage, death, cohabitation with another man, failure to use the real estate as her residence, the youngest child reaches eighteen years of age and graduates from high school, appellant becomes residential parent of the parties' minor children, or mutual consent of the parties. The separation agreement stated that if any of the events described occurred, then the real estate would be sold and the net proceeds divided equally between the parties.
On November 15, 1996, appellant filed a motion seeking sale of the real estate in accordance with the provisions of the separation agreement based upon appellee's cohabitation with another man, Kevin Morgan ("Morgan"). On January 14, 1997, a hearing was held before a magistrate. On January 24, 1997, the magistrate filed a decision finding that appellee was cohabiting with Morgan and that the marital real estate should be sold pursuant to the terms of the separation agreement.
Appellee filed objections to the magistrate's decision and on March 20, 1997, the trial court filed an entry overruling the magistrate's decision. The trial court found that appellant failed to prove that appellee was cohabiting with Morgan or that the two were involved in a relationship approximating marriage since there was "virtually no evidence of economic contribution or interdependence." It is from this judgment that appellant now appeals, setting forth the following assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT HELD THAT HE DID NOT PROVE COHABITATION.
In his sole assignment of error, appellant contends that the trial court erred by finding that he had failed to prove cohabitation between appellee and Morgan. Appellant argues that there is competent, credible evidence to support the magistrate's finding of cohabitation and that the trial court should have deferred to the magistrate's findings.
Divorce or dissolution decrees typically contain a clause which terminates spousal support in the event the recipient spouse cohabits with another person. A cohabitation clause in a divorce or dissolution decree is designed to prevent the recipient spouse from receiving support from both the former spouse and a new partner or supporting a new partner with payments from the former spouse. Moell v. Moell (1994), 98 Ohio App.3d 748, 751-752.
"Cohabitation requires not only a relationship, sexual or otherwise, of a permanent, continuing nature, but also some sort of monetary support between the spouse and the paramour so as to be the functional equivalent of a marriage." Barrett v. Barrett (June 10, 1996), Butler App. No. CA95-06-110, unreported at 25-26. See, also, Piscione v. Piscione (1992), 85 Ohio App.3d 273,276. Cohabitation requires more than simply living together and having sexual relations. Piscione, 85 Ohio App.3d at 276. Rather, it implies that "some sort of monetary support is being provided by the new partner or for the new partner." Thomas v. Thomas (1991), 76 Ohio App.3d 482, 485.
The decision whether a particular relationship or living arrangement constitutes cohabitation is a factual question to be determined by the trier of fact on a case-by-case basis. Moell,98 Ohio App.3d at 752; Dickerson v. Dickerson (1993), 87 Ohio App.3d 848,851. An appellate court will not overturn the judgment of a trial court with respect to a determination of cohabitation if it is supported by "some competent credible evidence going to all the essential elements of the case." Piscione, 85 Ohio App.3d at 276; Bussey v. Bussey (1988),55 Ohio App.3d 117, 119.
After a magistrate has heard evidence in a domestic relations matter, and "[u]pon consideration of any objections, the [trial] court may adopt, reject, or modify the magistrate's decision * * *." Civ.R. 53(E)(4)(b). The trial court has the "ultimate authority and responsibility over the [magistrate's] findings and rulings." Hartt v. Munobe (1993), 67 Ohio St.3d 3, 5. As the ultimate fact finder, the trial court determines "whether the [magistrate] has properly determined the factual issues and appropriately applied the law, and, where the [magistrate] has failed to do so, the trial court must substitute its judgment for that of the [magistrate]." Inman v. Inman (1995), 101 Ohio App.3d 115,118.
Appellee testified that Kevin Morgan has been her boyfriend for approximately one year. Appellee testified that Morgan does not reside with her in the marital real estate and that he resides in his own trailer. Appellee stated that Morgan stays overnight at her home approximately once per month and that she stays at his home approximately once per month. Appellee testified that Morgan has keys to her house and a garage door opener. Appellee testified that she pays all of her bills and expenses. Appellee stated that Morgan does not provide her with any financial assistance and she does not provide Morgan with financial assistance. Appellee testified that she and Morgan do not have any joint bank accounts or joint debts.
Appellee stated that Morgan's truck has been parked at her residence continuously since the summer of 1996 because it is inoperable and that she allows Morgan to drive one of her vehicles. Appellee stated that Morgan stores a three-wheel motorcycle, a dog sled, and dogs at her home and that he does not pay her any money for the storage of those items. Appellee stated that Morgan provides all the food for the dogs and that she does not pay any of the costs associated with keeping and feeding the dogs.
Appellee stated that she sees Morgan frequently on a social basis and that she and Morgan have attended wedding receptions together. Appellee stated that Morgan has accompanied her to appellant's house to pick up her daughter. Appellee stated that Morgan has mowed her lawn on occasion and that he installed a new filter in her furnace.
Kevin Morgan testified that appellee has been his girlfriend for approximately one year. Morgan stated that he does not reside with appellee, but lives in a trailer. Morgan stated that he pays the lot rent at the trailer park where he lives and that appellee does not assist him in the payment of his bills. Morgan stated that he does not assist appellee in any way financially. Morgan stated that he stays overnight at appellee's home approximately once per month.
Morgan stated that he owns a pick-up truck which has been parked at appellee's house for approximately one year because it is inoperable. Morgan stated that he uses appellee's car, has keys to her house, and has a garage door opener for her home because it is her car that he drives. Morgan testified that he owns eight dogs that he keeps at appellee's house in a fenced-in area that he installed on the property. Morgan stated that he feeds his dogs and pays for their food. Morgan stated that he also has a threewheel motorcycle and a dog sled that he stores at appellee's house. Morgan stated that he pays no rent for the privilege of keeping his personal property at appellee's house. Morgan stated that he has mowed appellee's grass and installed a furnace filter for her.
Thomas House, a former investigator formerly employed by Dick Holzberger Associates, testified that he conducted a surveillance at appellee's house on August 19, 1996. House stated that he was accompanied by Dennis Carter that day and that the two of them stopped at appellee's house and asked Morgan for directions. According to House, after Carter asked Morgan if he lived at the house, Morgan responded "yeah."
Appellant testified that he drove by the Marley home many times and that he observed Morgan at the home during the day and Morgan's truck parked there. Appellant admitted that Morgan's truck may not have been operable for several months. Appellant stated that he saw Morgan at the house on September 11, 1996 and that Morgan asked him to leave the property. Appellant stated that Morgan has accompanied appellee on numerous occasions when she has come to his home to pick up his daughter. Appellant stated that he has also observed Morgan operate appellee's cars and appellee and Morgan shopping together. Appellant testified that to his knowledge, Morgan stores a dog sled, a three-wheel motorcycle, and a truck at the Marley home and that he does not pay a storage fee for doing so.
After carefully reviewing the record, we find that the trial court's decision finding no evidence of cohabitation between appellee and Morgan and overruling the magistrate's decision is supported by competent, credible evidence. See Piscione,85 Ohio App.3d at 276; Inman, 101 Ohio App.3d at 118; Bussey,55 Ohio App.3d at 119. We find that based upon the evidence presented in the record, appellant failed to prove that appellee was cohabiting with Morgan. Piscione, 85 Ohio App.3d at 276; Barrett, Butler App. No. CA95-06-110, unreported. There is no evidence of financial support flowing between appellee and Morgan so as to constitute the functional equivalent of a marriage. Piscione at 276. Furthermore, the trial court was not required to defer to the magistrate's findings when deciding whether cohabitation had occurred. Hartt, 67 Ohio St.3d at 5; Inman,101 Ohio App.3d at 118; Civ.R. 53(E)(4)(b). Accordingly, appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and BROGAN, J., concur.
Brogan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), of the Ohio Constitution.