OPINION
{¶ 1} Appellant, Kelly M., appeals the decision of the Brown County Court of Common Pleas, Juvenile Division, granting legal custody of her two daughters to relatives.
 {¶ 2} Appellant is the mother of C.M., born September 13, 1991, and C.W., born June 5, 1996. Appellant had custody of her daughters in October 2002 when the Brown County Department of Job and Family Services ("the agency") filed a complaint alleging that the children were neglected, abused, and dependent. The complaint alleged that appellant was intoxicated while attending a field trip with C.M.'s class at the Ohio Renaissance Festival as a chaperone. The children were adjudicated dependent and neglected. C.M. was placed with Brad K., a maternal uncle, and his wife. C.W. was placed with Jan J., a maternal aunt, and her husband. On December 9, 2002, the trial court granted temporary custody of the children to the agency. Finding that the agency had failed to present clear and convincing evidence that the children were dependent and neglected, this court reversed and remanded the trial court's decision. In re C.M. and C.W., Brown App. Nos. CA2003-02-003 and CA2002-03-004, 2004-Ohio-2294.
 {¶ 3} On October 4, 2004, the children were adjudicated dependent by stipulation of appellant. That same day, the parties entered into an agreed disposition entry. The entry granted temporary custody of the children to the agency and continued the children's placement with their respective relatives. The entry also set forth a four-step process for reunification with the children. The first step, supervised visitation at the agency, was to last six weeks, and each of the next three steps, three months each. Appellant was required to, inter alia, participate in counseling and substance abuse treatment, and provide the agency with personal medical and psychological information and medical releases.
 {¶ 4} The entry provided that should information presented to the court by treating professionals indicate concern over proceeding to the next step, a hearing would be held and the trial court would "decide whether to restart the step, or to terminate visitation and proceed with a more permanent resolution." The entry also provided that "[s]hould [appellant] fail to remain substance free and/or fail a step, on the third failure, one of the following two dispositions will occur: [either grant legal custody of the children to the relatives who have placement, or instruct the agency to move for permanent custody]."
 {¶ 5} A review hearing was held on November 23, 2004 and continued in progress to February 1, 2005. By judgment entry filed on February 15, 2005, the trial court granted legal custody of C.M. to Brad and his wife, and legal custody of C.W. to Jan and her husband, as follows:
 {¶ 6} "The Court finds based on the testimony, the exhibits [including the deposition of Dr. Joseph V. Cresci, Jr.], and the in camera interview with [C.M.], that the mother has not complied with the requirements to which she agreed in October 2004, and that to let her start over now would be harmful to the children[.] The court had the opportunity to observe her throughout the almost five hours of the hearing, and for the most time she displayed very little emotion. She clearly lied about many things, and continues in the face of overwhelming evidence to deny her alcoholism. She accepts responsibility for nothing, blaming everyone around her for whatever goes wrong in her life. Meanwhile two little girls who need stability are promised visits with a mother who doesn't appear at all, or who shows up under the influence of drugs. This has to end and the court will end it now."
 {¶ 7} Appellant appeals, raising two assignments of error.
 {¶ 8} In her first assignment of error, appellant argues it was error to grant legal custody of the children to the relatives because no motion for legal custody was filed and appellant and her attorney did not receive notice that the hearing was a custody hearing. Appellant and her attorney believed the hearing was simply to review appellant's progress under the agreed entry.
 {¶ 9} Under R.C. 2151.353(A)(3), if a child is adjudicated dependent, a juvenile court may "award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" R.C. 2151.417 states that after a child has been adjudicated dependent and placed in an agency's custody, the juvenile court retains continuing jurisdiction over the child to amend the initial dispositional order and to review the child's custody arrangement or placement at any time, as long as the parties receive notice and an opportunity to be heard. See R.C.2151.417(A) and (B). We have held that the fact that a motion for legal custody is not filed does not preclude a juvenile court from awarding legal custody of a child if the aggrieved party received adequate notice and an opportunity to be heard and actively participated in the proceedings. In re Callier, Brown App. Nos. CA2001-04-006 and CA2002-04-007, 2002-Ohio-2406, ¶¶ 11, 18.
 {¶ 10} There is no evidence in the record that a motion for legal custody was filed by either the relatives or the agency. However, we find that the trial court was not prohibited from awarding legal custody of the children to their respective relatives because appellant received adequate notice of the intention to award legal custody and participated in the proceedings.
 {¶ 11} The agreed entry clearly directs the trial court, once it decides to terminate visitation and proceed with a more permanent resolution (rather than restarting a step), to grant legal custody of the children to their respective relatives or to instruct the agency to move for permanent custody. The hearing was originally scheduled for November 23, 2004 as a report/review hearing. The record shows that there may have been some confusion that day over the purpose of the hearing. The trial court and appellant's attorney believed the hearing was a review of appellant's supervised visitation under the first step of the agreed entry. By contrast, the agency argued that since appellant had failed to comply with the agreed entry, it was its recommendation to grant legal custody to the relatives. Following a caseworker's testimony, and due to docket and schedule constraints, the trial court continued the hearing in progress to February 1, 2005. On December 7, 2004, the parties received notice that the February 1, 2005 hearing was "for purposes of CUSTODY." At the beginning of that hearing, the agency argued that this was a "custody review-type hearing." Asked by the trial court whether this was her understanding, appellant's attorney replied it was. Appellant was at the hearing, was represented by an attorney, and testified.
 {¶ 12} The record shows that the possibility of granting legal custody of the children to their relatives was raised by the agency on November 23, 2004. When the hearing was continued, a notice of hearing clearly stated that the February 1, 2005 hearing was for purposes of custody. At the beginning of that hearing, appellant's attorney agreed the hearing was a custody hearing. Appellant was therefore provided with adequate notice of the possibility that the court would make an order granting legal custody. She was also afforded with opportunities to be heard, and did actively participate in the proceeding. Therefore the trial court did not err in holding a hearing on February 1, 2005 to consider whether to grant legal custody of the children to their respective relatives. In re Callier, Brown App. Nos. CA2001-04-006 and CA2002-04-007, ¶ 18.
 {¶ 13} We note, however, that in granting legal custody of the children to the relatives, the trial court failed to make findings that granting legal custody was in the best interests of the children. It is well-established that a determination of a child's best interest remains the primary standard to be applied in custody cases. In re Brown (2001), 142 Ohio App.3d 193, 198;In re Fulton, Butler App. No. CA2002-09-236, 2003-Ohio-5984; see, also, R.C. 2151.42(A) (requiring a juvenile court to consider the best interest of a child in determining whether to grant legal custody to a parent or movant). We therefore reverse the trial court's decision granting legal custody of the children to their respective relatives and remand the matter to the trial court with instructions to make specific findings as to whether or not granting legal custody of C.M. to Brad and his wife, and legal custody of C.W. to Jan and her husband, are in the best interest of C.M. and C.W. Appellant's first assignment of error is overruled in part and sustained in part.
 {¶ 14} In her second assignment of error, appellant argues that the trial court erred by relying on the deposition of Dr. Joseph V. Cresci, Jr., which, according to appellant, contained "an outdated psychological assessment" in conflict with the testimony of Dr. Eugene Smiley, a professional counselor.
 {¶ 15} A trial court enjoys broad discretion in the admission or exclusion of evidence. In re Mraz, Brown App. Nos. CA2002-05-011 and CA2002-07-014, 2002-Ohio-7278, ¶ 21. An abuse of discretion connotes a ruling that is rendered with an unreasonable, arbitrary, or unconscionable attitude. Id. In determining whether an abuse of discretion exists, a reviewing court should presume that the trial court was correct. Id. In addition, a trier of fact has the discretion to determine what weight it will give to the evidence. See Bussey v. Bussey
(1988), 55 Ohio App.3d 117.
 {¶ 16} Appellant challenges the trial court's reliance on Dr. Cresci's deposition on the grounds that Dr. Cresci last saw the children in January 2003, two years before the February 2005 hearing, and that the deposition stands in contrast to Dr. Smiley's testimony. In his deposition, Dr. Cresci testified that (1) appellant has a long history of substance abuse and failed treatment, (2) while she professes loving her children, "she's all talk and no action," and (3) the children have a long history of neglect and have suffered from appellant's drinking and inability to parent them. Dr. Cresci testified that if the children were to have contact with their mother, it should be through a limited supervised visitation where appellant "would have to come dead sober, not on any drugs that impair cognitive functioning, and * * * on time and absolutely reliable." Later in the deposition, when asked what recommendation he would have for the court on where to go next, Dr. Cresci recommended that appellant's parental rights be terminated, stating: "the court needs to get some testosterone circulating. [I]f this woman fails whatever level [the agency] set[s] up, that she's stopped * * * dead in her tracks and [the court] says to her * * * `You're finished, it's over, it's done, we are not putting up with this anymore.'"
 {¶ 17} Dr. Smiley last saw the children on January 25, 2005, a few days before the February hearing. Dr. Smiley testified how the children expressed concerns and sadness and anger over appellant's continued substance abuse, and that they were both doing well in their current placement with relatives. Dr. Smiley testified he would not recommend increased visitation with appellant. He further testified that resuming visitation would be detrimental to the children unless there was some assurance that appellant would actually come to the visitation sober and substance free. Appellant makes much of Dr. Smiley's statement that she has been "good at completing [recommended services]."[1] However, in that same answer, Dr. Smiley also stated that "there needs to be a period of time where there is a demonstrated change of lifestyle," and that "even the children somehow feel that Mom is not being honest about why she's not seeing them. Which is precisely my point. Mom needs to take her responsibility for her behavior * * * to the point that everybody has a sense that things have changed." Dr. Smiley testified that he did not want visitation to be reestablished prematurely "only for the children to be dashed again."
 {¶ 18} Upon reviewing Dr. Cresci's deposition in light of Dr. Smiley's testimony, we cannot say that the trial court's reliance on Dr. Cresci's deposition was so unreasonable, arbitrary, or unconscionable as to amount to an abuse of discretion. Appellant's second assignment of error is overruled.
 {¶ 19} Judgment affirmed in part, reversed in part, and remanded.
Powell, P.J., and Bressler, J., concur.
[1] The exact statement of Dr. Smiley was, "[a]nd she has in the past been very good at completing those things."