DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Chillicothe Municipal Court judgment that dismissed a domestic violence charge because, the court determined, R.C. 2919.25 violates Article XV, Section 11 of the Ohio Constitution. The state, plaintiff below and appellant herein, raises the following assignment of error for review and determination:
"THE TRIAL COURT ERRED IN FINDING THAT OHIO CONSTITUTION, ARTICLE XV, SECTION 11 APPLIES TO AND RENDERS REVISED CODE 2919.25 UNCONSTITUTIONAL."
 {¶ 2} The parties do not dispute the facts. Appellee and the alleged victim lived together, but were unmarried and appellee was charged with domestic violence in violation of R.C. 2919.25.
 {¶ 3} Appellee filed a motion to dismiss and argued that the domestic violence statute violated the Defense of Marriage Amendment (also known as Issue 1), approved in the November 2004 election and now Article XV, Section 11 of the Ohio Constitution.
 {¶ 4} On November 15, 2005, the trial court granted appellee's motion to dismiss. The court determined that the domestic violence statute "protects unmarried individuals in a relationship that approximates the design, qualities, significance or effect of marriage," in violation of Article XV, Section 11 of the Ohio Constitution. This appeal followed.
 {¶ 5} In its sole assignment of error, appellant asserts that the trial court erred by determining that R.C. 2919.25[1]
violates the Ohio Constitution.[2] We agree with appellant.
 {¶ 6} The majority of appellate districts that have considered this issue have concluded that R.C. 2919.25 does not violate the Ohio Constitution. In State v. Burk164 Ohio App.3d 740, 744, 2005-Ohio-6727, 843 N.E.2d 1254, ___, at paragraphs 20-22 and 31, the Eighth Appellate District commented on this issue as follows:
"{¶ 20} As explained by the Cleveland Municipal Court inCleveland v. Knipp (Mar. 10, 2005), Cuyahoga Cty. M.C. NO. 2004 CRB 039103, 2005 WL 1017620, the legislature, in creating the definition `living as a spouse,' did not intend `to bestow upon unmarried individuals, or to recognize in them, a legal status that approximates the design, qualities, significance or effect of marriage.' In Knipp, the court denied the motion to dismiss the charge of domestic violence, holding that the legislature's `primary intent in crafting the state's domestic violence statutes was to provide protection to all persons who cohabit, regardless of their martial status.'
{¶ 21} Knipp further reasoned that the legislature `merely acknowledged the reality that, with or without official approval, human beings in Ohio, as elsewhere, will come together in a variety of loving relationships that will sometimes turn violent. Ohio's domestic violence laws assure that all of its citizens who require the special protections that the circumstances of domestic violence create will have access to the resources of their government to enhance their safety. This assurance can be, and has been, made, even to unmarried couples, without the extension of the status or benefits of marriage.'
{¶ 22} In fact, Ohio's domestic-violence statute broadly encompasses many individuals, including the parent or child of the offender or another person related by blood to the offender, and the parent or child of a spouse, a person living as a spouse, or another person related by blood or affinity to a spouse or person living as a spouse. R.C. 2919.25(F)(1)(a)(ii) and (iii). Likewise, Ohio courts have consistently applied the domestic-violence statute to same-sex couples, reasoning that it is not the sexual relationship of the parties that determines whether their factual situation falls within the definitions covered by Ohio's domestic-violence statute. See State v.Hadinger (1991), 61 Ohio App.3d 820, 823, 573 N.E.2d 1191. Although sexual intercourse is a `persuasive indicium' of cohabitation, it is not conclusive. Instead, the factual determination for domestic-violence purposes has always been whether the parties have cohabited. Id.
{¶ 31} Thus, for the purposes of this appeal, the threshold determination of whether any individuals fall within the definition of `family or household member' is whether they reside with or have resided with the offender. R.C. 2919.25(F)(1)(a). For example, if a man and a woman who are legally married have never resided with each other in any fashion, they do not fall within the definition of `family or household member' and, thus, any violence between them may be assault, but it certainly is not considered domestic violence under Ohio law. Because Ohio's domestic-violence statute is predicated upon the factual determination of cohabitation — and not the legal determination of marriage — both Issue I and Ohio's domestic violence statute `may stand.'"
See, also, Cleveland v. Voies, Cuyahoga App. No. 86317,2006-Ohio-815; State v. Nixon, Summit App. No. 22667,2006-Ohio-72; State v. Carswell, Warren App. No. CA2005-04-047,2005-Ohio-6547; State v. Rexroad, Columbiana App. Nos. 05CO36, 05CO52, 2005-Ohio-6790; State v. Newell, Stark App. No. 2004CA264, 2005-Ohio-2848. The Second District, however, concluded that R.C. 2919.25 violates the Ohio Constitution. SeeState v. Ward, Greene App. No. 2005CA75, 2006-Ohio-1407.
 {¶ 7} We agree with the rationales expressed in Burk,Newell, Carswell, Rexroad, and Nixon that R.C. 2919.25
does not create or recognize a legal status approximating marriage. Instead, it defines a criminal offense and defines the class of persons entitled to protection. Because R.C. 2919.25 is predicated upon the factual determination of cohabitation, not the legal determination of marriage, both the statute and Article XV Section II of the Ohio Constitution may coexist.
 {¶ 8} Accordingly, based upon the foregoing reasons, we hereby sustain appellant's sole assignment of error, reverse the trial court's judgment and remand the matter for further proceedings consistent with this opinion.[3]
JUDGMENT REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
[1] R.C. 2919.25 provides:
(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
(B) No person shall recklessly cause serious physical harm to a family or household member.
(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.
* * *
(F) As used in this section and sections 2919.251 and 2919.26
of the Revised Code:
(1) `Family or household member' means any of the following:
(a) Any of the following who is residing or has resided with the offender:
(i) A spouse, a person living as a spouse, or a former spouse of the offender;
(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;
(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.
(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.
[2] Article XV, Section 11 provides:
"Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance, or effect of marriage."
[3] Obviously, a conflict exists on this issue among Ohio appellate courts. Thus, appellee may request, pursuant to App.R. 25, that we certify this conflict to the Ohio Supreme Court for final review and determination.